**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 03 C 3578 |
| **QT, INC., Q-RAY COMPANY, BIO-METAL, INC., QUE TE PARK, a.k.a. ANDREW Q. PARK, and JUNG JOO PARK,** | ) Magistrate Judge Ian H. Levin |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Jung Joo Park's motion for summary judgment. For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Plaintiff Federal Trade Commission (hereinafter "FTC") initiated the subject lawsuit on May 27, 2003 alleging that Defendants QT, Inc. (hereinafter "QT"), Q-Ray Company (hereinafter "Q-Ray"), Bio-Metal, Inc. (hereinafter "Bio-Metal")[1], Que Te Park (hereinafter "Mr. Park") and Jung Joo Park (hereinafter "Mrs. Park")[2] engaged in deceptive acts or practices and false advertising in connection with the advertising, marketing, and sale of a purported pain-relief product called the Q-Ray Ionized Bracelet (hereinafter "Q-Ray Bracelet") in violation of Sections 5(a) and 12 of the

---

[1] QT, Q-Ray and Bio-Metal are collectively referred to as the "corporate defendants" in this opinion.

[2] QT, Q-Ray, Bio-Metal, Mr. Park and Mrs. Park are collectively referred to as "Defendants" in this opinion.

Federal Trade Commission Act (hereinafter "FTC Act"), 15 U.S.C. §§ 45(a) and 52.[3] (Complt. ¶ 1.) The FTC avers that Defendants falsely represented or made claims that lacked substantiation at the time the representations were made that the Q-Ray Bracelet provides immediate, significant or complete relief from various types of pain; such as, musculoskeletal and sciatic pain, persistent headaches, sinus problems, tendinitis, and injuries. (*Id.* ¶¶ 19-20.) The FTC further contends that clinical testing shows that the Q-Ray Bracelet is no better than a placebo product at relieving musculoskeletal pain. (*Id.* ¶¶ 20, 22.)

In May of 2003, the FTC sought and was granted a temporary restraining order (Dkt. No. 2) and, subsequently, in June of 2003, the parties stipulated to a preliminary injunction. (Dkt. No. 34.) The FTC seeks a permanent injunction against Defendants and consumer redress for injury resulting from Defendants' violations of the FTC Act. (Complt. ¶¶ 25-26.)

QT, Q-Ray, and Bio-Metal are Illinois corporations with their principal offices or places of business located in Elk Grove Village, Illinois. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶¶ b, c, & d.) QT is in the business of importing, marketing and selling the Q-Ray Bracelet[4] and has sold Q-Ray Bracelets since at least 1996. (Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶¶ 79-80.) Q-Ray handles the distribution of the Q-Ray Bracelet as well as customer service functions.[5] (*Id.* ¶ 82.) The FTC

---

[3]Sections 5(a) and 12 of the FTC Act prohibit unfair or deceptive acts or practices, and false advertisements for food, drugs, devices, services, or cosmetics in or affecting commerce, respectively. 15 U.S.C. §§ 45(a) and 52.

[4]The FTC alleges that QT, which sometimes does business as Bio-Ray America, transacts business through advertising, marketing and the sale of the Q-Ray Bracelet via U.S. media outlets and Internet sites. (Complt. ¶ 5.)

[5]The FTC also alleges that Q-Ray transacts business through the dissemination of a television infomercial for the Q-Ray Bracelet which is aired on U.S. media outlets. (Complt. ¶ 6.)

alleges that Bio-Metal transacts business through the marketing and distribution of the Q-Ray Bracelet.[6] (Complt. ¶ 7.)

Mr. Park is the President and sole owner of QT, Q-Ray and Bio-Metal. (Que Te Park Aff. ¶ 3.) Mrs. Park, who is Mr. Park's wife, was an employee of QT and Q-Ray and has also served as a corporate officer; namely, the Secretary of QT, Q-Ray and Bio-Metal.[7] (Pl.'s LR56.1(b)(3)(B) St. ¶¶ 58-61, 84-85, 87-89, Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 1.)

In the instant motion, Mrs. Park moves for summary judgment averring that she had no role, either directly or indirectly, in the corporate policies and acts of the corporate defendants, had no authority to control those policies and acts, and had no knowledge of those policies and acts. (*See* Def.'s Mem & Reply.) Accordingly, Mrs. Park contends that she does not meet the legal standard for individual liability under the FTC Act. (*Id.*)

## LEGAL STANDARDS

### I. SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine

---

[6] The FTC avers that Defendants collectively have operated a common business enterprise. (Complt. ¶ 10.)

[7] Bio-Metal was previously called Bio-Ray International, Incorporated. (Def.'s Resp. to Pl.'s LR56.1(b)(3)(B) St. ¶ 89.)

issue of material fact remains for trial. *See LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also LINC*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## II.   FEDERAL TRADE COMMISSION ACT

Under the FTC Act, "[a]n individual may be held liable . . . for corporate practices if the FTC first can prove the corporate practices were misrepresentations or omissions of a kind usually relied on by reasonably prudent persons and that consumer injury resulted." *FTC v. Amy Travel Serv., Inc.,* 875 F.2d 564, 573 (7th Cir. 1989)(*citing FTC v. Kitco of Nevada, Inc.,* 612 F.Supp. 1282 (D. Minn. 1985)). Thus, "[o]nce corporate liability is established, the FTC must show that the individual defendants participated directly in the practices or acts or had authority to control them." *Id.* The "[a]uthority to control [a] company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *Id.*

4

Next, the FTC must demonstrate that the individual defendant "had some knowledge of the practices." *Amy Travel Serv., Inc.,* 875 F.2d at 573. In other words, "[t]he FTC is required to establish the defendants had or should have had knowledge or awareness of the misrepresentations." *Id.* at 574 (*citing Kitco,* 612 F.Supp. at 1292). Thus, the knowledge requirement does not require an individual to subjectively intend to defraud or deceive consumers but, instead, only requires that a defendant knew or was aware of a misrepresentation. *Id.* The knowledge requirement "may be fulfilled by showing that the individual had 'actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth.'" *Id.* (citation omitted). "[T]he degree of [an individual's] participation in business affairs is probative of knowledge." *Id.* (citation omitted).

## **ANALYSIS**

Mrs. Park initially avers that there are no genuine issues of material fact with regard to her liability because even assuming *arguendo* that the FTC can prove that the corporate defendants are liable under the FTC Act, the FTC cannot show that she is liable under the criteria required for individual liability. (Def.'s Mem. at 5-6.) Mrs. Park thus avers that while she was listed as a Secretary for QT and Bio-Metal, she played no active role in her capacity as a Secretary and had no other decision-making role. (*Id.* at 2.)

As support for her position that she did not participate in the practices or acts of the corporate defendants, Mrs. Park sets forth the following facts which the FTC admits and does not dispute. (Def.'s Mem. at 2-3, 6-8.)

Initially, Mrs. Park points out that she has not formulated, directed or controlled the acts and

5

practices alleged in paragraph 9[8] of the complaint.[9] (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶¶ 8, 10, 12.)

Next, Mrs. Park has not promoted, offered for sale, sold or distributed the Q-Ray Bracelet to the public.[10] (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶¶ 16, 18, 20, 43.) She was never involved with the sale or marketing of the Q-Ray Bracelet. (*Id.* ¶ 39.)

Mrs. Park has not advertised the Q-Ray Bracelet to the public.[11] (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 14.) She has never discussed advertising issues, reviewed any type of advertising or handled media placement for advertising. (*Id.* ¶¶ 22-24.) Mrs. Park has not advertised any "risk-free"guarantees associated with the purchase of the Q-Ray Bracelet.[12] (*Id.* ¶ 47.)

Mrs. Park did not disseminate infomercials as alleged in paragraph 13[13] of the complaint. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 45.) She was not involved with the production of any

---

[8]Paragraph 9 of the complaint states in pertinent part: "At all times material to this Complaint, acting alone or in conjunction with others, M[r]s. Park has formulated, directed, controlled or participated in the acts and practices set forth in this Complaint." (Complt. ¶ 9.)

[9]The FTC admits that it has no evidence that Mrs. Park formulated, directed or controlled the acts and practices alleged in paragraph 9 of the complaint. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶¶ 9, 11, 13.)

[10]The FTC admits that it has no evidence that Mrs. Park promoted, offered for sale, sold, or distributed the Q-Ray Bracelet. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶¶ 17, 19, 21, 44.)

[11]The FTC has no evidence that Mrs. Park advertised the Q-Ray Bracelet to the public. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 15.)

[12]The FTC has no evidence that Mrs. Park advertised any "risk-free" guarantees associated with the purchase of the Q-Ray Bracelet to the public. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 48.)

[13]Paragraph 13 of the complaint states in pertinent part: "To induce consumers to purchase the Q-Ray Bracelet, Defendants have disseminated or have caused to be disseminated three different television infomercials." (Complt. ¶ 13.)

infomercials, was not present during the filming or editing of any infomercials, and was not involved in the identification of consumers to include in the infomercials.[14] (*Id.* ¶¶ 25-27.)

Mrs. Park has also never worked in the customer service department, has never interacted with customer service employees, has no authority over decisions or policies in the customer service department, has never discussed customer service issues with company management, and has not attended any meetings with other employees concerning customer service. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶¶ 28-30, 32-33.)

Mrs. Park has not represented, expressly or by implication, that the Q-Ray Bracelet provides immediate, significant or complete relief from various types of pain; such as, musculoskeletal and sciatic pain, persistent headaches, sinus problems, tendinitis, or injuries.[15] (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 49.) She has not represented, expressly or by implication, that tests prove that the Q-Ray Bracelet relieves pain.[16] (*Id.* ¶ 51.) Mrs. Park also has not represented, expressly or by implication, that the Q-Ray 30-Day Satisfaction Guarantee permits consumers to readily obtain a full refund of the purchase price if they return the Q-Ray Bracelet within thirty days.[17] (*Id.* ¶ 53.)

---

[14] The FTC has no evidence that Mrs. Park disseminated infomercials as alleged in paragraph 13 of the complaint. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 46.)

[15] The FTC has no evidence that Mrs. Park represented, expressly or by implication that the Q-Ray Bracelet provides immediate, significant or complete relief from various types of pain; such as, musculoskeletal and sciatic pain, persistent headaches, sinus problems, tendinitis, or injuries. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 50.)

[16] The FTC has no evidence that Mrs. Park has represented, expressly or by implication, that tests prove that the Q-Ray Bracelet relieves pain. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 52.)

[17] The FTC has no evidence that Mrs. Park represented, expressly or by implication, that the Q-Ray 30-Day Satisfaction Guarantee permits consumers to readily obtain a full refund of the purchase price if they return the Q-Ray Bracelet within thirty days. (Pl.'s Resp. to Def.'s
(continued...)

Mrs. Park has never had an office at the corporate defendants' facilities and has not had a corporate email account. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 6.) She does not report to anyone and does not supervise any employees. (*Id*. ¶ 7.) Mrs. Park has never attended any company meetings. (*Id.* ¶ 34.) She has no authority over hiring or personnel decisions. (*Id.* ¶ 31.) Accordingly, Mrs. Park contends that the evidence is undisputed that she did not participate directly in any of the acts or practices of the corporate defendants that could give rise to her liability.[18]

The FTC, on the other hand, asserts that Mrs. Park has failed to identify or list four key material facts (in her recitation of alleged uncontroverted facts) that establish her liability herein. (Pl.'s Resp. at 2.) Specifically, Mrs. Park has failed to list the following four key material facts that she: (1) shares equally in the assets and proceeds of the family-run corporate defendants with her husband; (2) served as an officer of all three corporate defendants and held herself out to the public as an officer by signing corporate documents filed with the State of Illinois; (3) received executive-level compensation for her work for the corporate defendants; and (4) had signature authority on many of the corporate defendants' bank accounts that held substantial amounts of money. (*Id.*) Accordingly, the FTC avers that these additional key facts create genuine issues of material fact which defeat summary judgment. (*Id.*)

The Court agrees with the FTC and finds that there are also additional facts in the record which preclude the Court from granting summary judgment herein. For example, the record sets

---

[17](...continued)
LR56.1(a)(3) St. ¶ 54.)
Mrs. Park is not familiar with the procedure for processing refunds and refund requests and had no role in creating refund policies. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶¶ 37-38.)

[18]Mrs. Park also avers that Exhibits A, B, C and D attached to the complaint do not include any statements from, by or about her. (Def.'s LR56.1(a)(3) St. ¶ 55.)

forth that Mrs. Park was an employee of both QT[19] and Q-Ray. (Pl.'s LR56.1(b)(3)(B) St. ¶¶ 58-60.) Mrs. Park's work at QT entailed assisting in areas that were short-staffed which included doing assembly, handling and shipping tasks at the factory.[20] (*Id.* ¶ 66.) She also filled in at QT's warehouse and office and assisted with employee relations at QT by working with Korean-speaking employees to resolve internal conflicts. (*Id.* ¶¶ 67-69.) There is evidence that Mrs. Park looked after the office while Mr. Park was out of town on frequent business trips. (*Id.* ¶¶ 64-65.)

Mrs. Park served as a corporate officer; namely, the Secretary for all three corporate defendants and was listed as the Secretary for QT and its predecessor corporation, QT Company, Inc., from 1987 through 2003. (Pl.'s LR56.1(b)(3)(B) St. ¶¶ 84-85, 87-89.) In her capacity as Secretary, Mrs. Park signed amendments to the Articles of Incorporation for QT Company, Inc. in 1987 and 1988. (*Id.* ¶¶ 84(a)-(b).) She was listed as the Secretary for QT in the company's annual reports to the State of Illinois from 1999 through 2002. (*Id.* ¶¶ 84(c)-(f).)

Mrs. Park was also listed as the Secretary for Q-Ray from 1999 through 2003. (Pl.'s LR56.1(b)(3)(B) St. ¶¶ 85(a)-(e).) In this capacity, she signed an amendment to the Articles of Incorporation for Q-Ray in 2000 and was listed as the Secretary for Q-Ray in the company's annual reports to the State of Illinois from 1999 through 2002. (*Id.* ¶¶ 85(a)-(e).)

Mrs. Park was further listed as the Secretary for Bio-Ray International, Inc. (hereinafter

---

[19]Mrs. Park was employed at QT on a part-time basis from 1990 to 2000 and on a full-time basis from 2001 to 2004. (Brzeczek Aff. ¶ 16.) As of August 2004, Mrs. Park was a full-time employee at QT and was being paid a salary. (Pl.'s LR56.1(b)(3)(B) St. ¶ 61.)

[20]Mrs. Park alleges that her role at QT was limited to providing assistance at QT's warehouse and performing minor chores; such as, congratulating employees when they got married or celebrated birthdays, and providing employees with food and beverages. (Def.'s LR56.1(a)(3) St. ¶ 4.)

"Bio-Ray"), the predecessor corporation of Bio-Metal, on the company's 1999 annual report to the State of Illinois. (Pl.'s LR56.1(b)(3)(B) St. ¶¶ 87, 89.) In her capacity as the Secretary for Bio-Ray, Mrs. Park signed an amendment to the Articles of Incorporation in 2002. (*Id.* ¶ 88.)

The record further demonstrates that Mrs. Park had signature authority on numerous of the corporate defendants' bank accounts containing substantial amounts of money.[21] (Pl.'s LR56.1(b)(3)(B) St. ¶¶ 91(a)-(z).) She was also paid a generous executive-level salary and received substantial sums of money in direct transfers from the corporate defendants. (*Id.* ¶¶ 94-96, 97(a)-(f).)

The Court finds that, in light of Mrs. Park's long-term involvement, employment and executive-level salary with the corporate defendants, her corporate role as Secretary for the corporate defendants, her authority to sign on the corporate defendants' substantial bank accounts, her receipt of substantial sums of monies in direct transfers from the corporate defendants, and the family-run nature of the corporate defendants, a reasonable inference can be made that Mrs. Park may have participated in the acts and practices of the corporate defendants and/or may have had the requisite authority to control the corporate defendants. *See e.g., Amy Travel Serv., Inc.,* 875 F.2d at 573. Implicitly, a reasonable inference also exists that Mrs. Park knew or should have known about the alleged deceptive practices or acts of the corporate defendants. *Id.* at 573-74.

Accordingly, and considering the myriad factual disputes presented by the parties, genuine

---

[21]Per the stipulated protective order entered in this case on June 26, 2003, the parties filed their respective responsive and reply materials under seal because the subject filings contain Defendants' confidential financial information. Accordingly, the Court will not disclose any of Defendants' confidential financial information in this opinion and, instead, will refer to it in broad or general terms. *Pepsico, Inc. v. Redmond,* 46 F.3d 29, 31 (7th Cir. 1995)("the traditional way for judges to accommodate the legitimate competing interests is to keep the secrets themselves under seal, referring to them only indirectly in the opinion.")

issues of material fact exist as to whether Mrs. Park participated directly in the practices or acts of the corporate defendants or if she had the authority to control the corporate defendants. Moreover, material issues of fact exist regarding whether Mrs. Park knew or should have known about the alleged deceptive practices or acts of the corporate defendants. Therefore, summary judgment herein is precluded.

## CONCLUSION[22]

Based on the foregoing, Mrs. Park's motion for summary judgment is denied.

**ENTER:**

*/s/ Ian H. Levin*
**IAN H. LEVIN**
**United States Magistrate Judge**

**Dated: September 14, 2005**

---

[22] In view of the Court's ruling, it is deemed unnecessary to consider the FTC's and Mrs. Park's other arguments raised herein. Accordingly, the Court does not need to address the FTC's assertion that Mrs. Park should be held liable as a relief defendant or the FTC's objections (and Mrs. Park's response to the FTC's objections) to the affidavits of Timothy Brzeczek and Que Te Park.