# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | Case No. 03 C 3578 |
| ) | |
| v. ) | Magistrate Judge Morton Denlow |
| ) | |
| **QT, INC., Q-RAY, COMPANY,** ) | |
| **BIO-METAL, INC., QUE TE PARK,** ) | |
| **a.k.a. ANDREW Q. PARK, and** ) | |
| **JUNG JOO PARK,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Defendants QT, Inc., Q-Ray Company, Bio-Metal, Inc., Que Te Park, and Jung Joo Park (collectively "Defendants"), petition the Court to release funds frozen under the June 11, 2003 Stipulated Order for Preliminary Injunction With Asset Transfer Restrictions And Other Equitable Relief ("Preliminary Injunction Order") to compensate and reimburse fees and costs incurred by their counsel, Ungaretti & Harris, LLP ("the Ungaretti Firm"). Defendants seek release of $1,265,226.72 to pay legal fees and costs incurred from March 2005 through the entry of the Final Judgment Order on November 13, 2006.[1] The Court grants Defendants' Petition in part, and orders that interest earned through November 13,

---

[1] Although the Petition refers to November 17, 2006, Defendants acknowledge that no funds for fees can be sought for services performed after November 13, 2006, the date upon which the Final Judgment Order was entered.

1

2006, on any accounts frozen under the Preliminary Injunction Order be released to the Ungaretti Firm on the condition that the Ungaretti Firm agrees to subject itself to this Court's jurisdiction in the event the Federal Trade Commission ("FTC") seeks review of this order. The Court defers further consideration of this Petition until after the FTC has completed asset discovery against Defendants.

## I. RELEVANT PROCEDURAL HISTORY

This case commenced on May 27, 2003, when the FTC filed its complaint and motion for a temporary restraining order, alleging that Defendants violated various provisions of the Federal Trade Commission Act, 15 U.S.C. §§ 45(a), 52, 53(b). On June 11, 2003, Judge Darrah entered the Preliminary Injunction Order, which included a provision freezing $17 million of Defendants' assets. Provisions for attorneys' fees and expenses were included as follows:

> D. Notwithstanding the $17 million [in frozen assets], Defendants may pay reasonable, usual, ordinary, and necessary business and living expenses, and attorneys' fees, costs and expenses of up to $2.5 million from existing assets. Defendants may also pay such reasonable, usual, ordinary, and necessary business and living expenses, and attorneys' fees, costs and expenses from any income of any type generated after the date of this Order. Defendants shall produce a monthly balance sheet and accounting of such expenses and income to the Federal Trade Commission no later than five (5) days after the end of each month.
>
> E. [O]nce Defendants secure and retain $17 million in assets . . ., any additional existing assets over the $17 million may be used to pay reasonable, usual, ordinary, and necessary business and living expenses, and attorneys'

fees, costs and expenses. . . .

Preliminary Injunction Order, p. 5, ¶ III.D&E.

On September 8, 2006, the Court entered its Memorandum Opinion and Order, finding that all Defendants other than Jung Joo Park violated the FTC Act, and ordering refunds to consumers, disgorgement of Defendants' profits, and a permanent injunction to be set forth in a final judgment order. *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 975-76 (N.D. Ill. 2006). The Final Judgment Order was entered on November 13, 2006. In addition to its injunctive provisions, the Final Judgment Order requires Defendants (other than Jung Joo Park) to provide refunds to any unsatisfied consumers up to a total of $87,019,840 plus pre-judgment interest, but to disgorge a minimum of $22.5 million in profits regardless of the amount of refunds sought by consumers. While the assets frozen under the Preliminary Injunction Order belonging to Jung Joo Park were released, the remaining assets were to remain frozen. The Final Judgment Order further provides that:

> the Court reserves the right to permit, if allowed by law, some of the restricted assets . . . to be used to pay Defendants' reasonable attorneys fees and costs . . . up to [$1.3 million]. Within seven (7) days from the date of entry of this Order, Defendants shall file an up-to-date petition identifying the reasonable attorneys' fees and costs incurred in this matter. . . . [T]he Court may enter a supplemental order concerning attorneys' fees and costs incurred in this matter.

Final Judgment Order, p. 18, ¶ XIV. Defendants' Petition for Compensation and Reimbursement of Expenses of Ungaretti & Harris is currently before the Court.

## II. RELEVANT EQUITABLE PRINCIPLES

While FTC defendants do not have a legal entitlement to an asset freeze provision allowing for the payment of attorneys' fees, courts in this circuit have routinely made such allowances to permit some of the frozen assets to be used to pay the lawyers defending against the FTC's suit. *See FTC v. Think Achievement Corp.*, 312 F.3d 259, 262 (7th Cir. 2002); *FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 570, 575-76 (7th Cir. 1989); *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1032 (7th Cir. 1988); *FTC v. Windermere Big Win International*, 1999 WL 608715 at *6 (N.D. Ill. Aug. 5, 1999). The decision is within the Court's equitable discretion. *Think Achievement*, 312 F.3d at 262.

**A.     THE PHASES OF ASSET FREEZE/ATTORNEYS' FEES LITIGATION**

There are three distinct phases of the asset freeze/release of attorneys' fees process in FTC cases. Typically, a temporary restraining order and preliminary injunction are entered in the early part of the litigation, which includes an asset freeze and some type of provision for attorneys' fees. *See e.g. Amy Travel*, 875 F.2d at 575-76; *but see Think Achievement*, 312 F.3d at 262 (no provision for attorneys' fees in preliminary injunction, but releasing funds periodically during course of litigation). The attorneys' fees provision may involve a cap on the total amount of fees for which funds will be released, *see World Travel*, 861 F.2d at 1022, or require prior court approval, *see Windermere*, 1999 WL 608715 at *6. Such provisions are necessary to enable defendants to obtain representation in order to defend against the FTC's charges.

The next phase occurs when a release of funds is actually sought to pay the attorneys. Several factors are at play in this phase. First, the attorneys representing the FTC defendants

are entitled to rely on the terms in the preliminary injunction for provision of attorneys' fees, and have an equitable claim to those funds, subject to the terms of the preliminary injunction order. *Think Achievement*, 312 F.3d at 262-63. Second, where court approval is required before funds will be released, an important consideration is whether the defendants have other available funds by which to pay their attorneys, which requires full financial disclosure by the defendants. *World Travel*, 861 F.2d at 1032; *Windermere*, 1999 WL 608715 at *6. Finally, the claims of the consumers who were the victims of the defendants' wrongdoing must be considered. While other courts have refused to grant any attorneys' fees where there would be insufficient funds to compensate the victims, *see CFTC v. Noble Metals International, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995); *FTC v. Sharp*, 1991 WL 214076 at *1-2 (D. Nev. July 23, 1991), the Seventh Circuit requires the reliance-based claims of the attorneys to be balanced against the claims of consumers, *Think Achievement*, 312 F.3d at 262-63.

The third phase occurs if and when the defendants argue that the provisions made in the preliminary injunction are insufficient to cover the fees being incurred. A court must consider in this phase whether defendants have other assets available to pay their attorneys, which again requires full financial disclosure. *World Travel*, 861 F.2d at 1032. It is also appropriate to consider the amount needed to compensate consumers. *See Think Achievement*, 312 F.3d at 262-63.

**B.      NO RELEASE OF FUNDS TO PAY "FUTURE FEES"**

*Think Achievement* provides that defendants may not seek release of funds to pay for

future legal fees once it has been determined that defendants have violated the FTC Act and the frozen funds rightfully belong to consumers. 312 F.3d at 262. It is unclear from *Think Achievement*, however, when exactly fees are "future fees." That case involved a final judgment order that was combined with a memorandum opinion, and the funds were to be used to defend a criminal case for which no work had yet been done. *Id.* at 262-63. The opinion alternately framed the issue around the phrases "prior to the entry of the final judgment" and "a judicial determination of what fraction of [the frozen] assets was legitimate wealth of [the defendant] and what fraction represented proceeds of fraud to which [the defendant] had no equitable entitlement." *Id.* at 262.

In this case, the Memorandum Opinion was entered more than two months before the Final Judgment Order. Because the court in *Think Achievement* grounded its decision in the issue of reliance by the attorneys whose fees were to be paid from frozen assets, it is probably a sounder reading of the case to consider as future fees anything incurred after the Final Judgment Order, because until that time there was no enforceable judgment determining the Defendants' "lack of lawful interest in the frozen funds." *Id.* at 262-63. Unlike the attorney in *Think Achievement,* who had not yet begun work on the different matter, the Ungaretti Firm seeks fees for legal services and expenses incurred in this case prior to the entry of the Final Judgment Order. Therefore, Defendants may be entitled to funds to pay fees incurred up to the date of the Final Judgment Order, if release of funds is otherwise appropriate.

### III. DISCUSSION

## A. DEFENDANTS' ARE ENTITLED TO RELEASE OF INTEREST EARNED ON FROZEN ACCOUNTS

The Preliminary Injunction Order provides that "Defendants may also pay such reasonable, usual, ordinary, and necessary business and living expenses, and attorneys' fees, costs and expenses from any income of any type generated after the date of this Order." Defendants argue that the interest earned on any frozen accounts is "income of any type generated after the date of this Order." The Court agrees that the language is broad enough to include interest earned prior to the date of the Final Judgment Order.

While *Think Achievement* directs the Court to weigh the equitable claims of the firm to frozen assets against those of the victim-consumers, the interest earned from the frozen accounts prior to the Final Judgment Order in this case is a different issue altogether. Under the terms of Preliminary Injunction Order, the interest was not intended to remain a frozen asset, and may be used to pay attorneys' fees. The Preliminary Injunction Order did not contemplate Court approval or equitable weighing against the claims of consumers, so the Ungaretti Firm could reasonably have relied upon the terms of the Preliminary Injunction Order that interest earned up to the date of the Final Judgment Order would be available to pay their fees.

## B. NO FURTHER FUNDS MAY BE RELEASED UNTIL FURTHER FINANCIAL DISCLOSURES ARE MADE THROUGH THE ASSET DISCOVERY PROCESS

Because the Preliminary Injunction Order only provides, as a source of funds from

which to pay attorneys' fees, income generated after the Preliminary Injunction Order was entered, the Ungaretti Firm has no reliance-based claim to the release of any frozen assets. Simply stated, the Ungaretti Firm, with a full understanding of Defendants' financial condition by virtue of the monthly financial disclosures made to the FTC, undertook this litigation at its own risk. Further, it has placed the Court in a needlessly difficult position by failing to raise this issue until the end of the litigation.

By virtue of the lateness of the hour, Defendants' petition sits in an unusual procedural posture. We are not in the first phase of the asset freeze/attorneys' fees process, where the court exercises its discretion through the preliminary injunction in deciding how to provide for fees going forward. Nor are we in the second phase, where the court considers whether to release fees under the terms of the preliminary injunction. Rather, the Court is in a position similar to the court in *World Travel*, in which the funds carved out in the preliminary injunction were allegedly exhausted, and more funds were needed to continue forward. The court required full financial disclosure before it would decide to release additional funds. While *World Travel* did not discuss the amount likely needed for consumer redress, *Think Achievement* implies that this may be an important consideration as well.

Yet the situation here is even more difficult than in *World Travel*, where the petition was made soon after the funds provided for were allegedly spent. Here, Defendants racked up a seven-figure legal bill for this case, made little if any payments towards this bill since March 2005, and now ask to have their fees paid in full from the limited cash assets known

to be available for consumer redress with no legitimate explanation for the delay.[2] To the extent that the delay has prejudiced the FTC or made analysis of Defendants' financial position more difficult, something which the Court cannot yet determine, the delay must be held against Defendants.

Certainly the Court must understand how Defendants spent all of the income generated over the period of time during which the fees accrued. Defendants have provided only a cursory affidavit from a QT executive as support for their position that they were unable to pay more in legal fees. No cash flow statements were provided to account for the Defendants' spending, and there is no evidence from Defendants clarifying how Mr. and Ms. Park spent their income. While Defendants complain that this sort of disclosure is more than the FTC sought in the Final Judgment Order, the purpose of the disclosure provisions of the Final Judgment Order was to aid the FTC in conducting asset discovery regarding Defendants' current financial state, not to recreate Defendants' financial position over the

---

[2]Defendants argue in their brief that they did not ask for release of funds earlier because they were afraid of compromising their settlement position. Given that they already made monthly financial disclosures to the FTC, which they now claim made clear their desperate position all along, this argument is disingenuous. Def. Reply Br. at 5-6 ("Throughout this case, the FTC has received these [monthly financial] disclosures and has been aware that Defendants' profits were insufficient to cover their operating expenses and litigation costs.") Defendants have also argued that the FTC insisted on a full evidentiary hearing on Defendants' financial position before it would agree to the release of additional funds, and that such a hearing would only have increased the fees incurred. The Court finds this argument unpersuasive. First, the Court would have decided if and to what extent an evidentiary hearing was required, not the FTC. Second, given that over $1 million in fees are at issue, the burden imposed by any evidentiary hearing would have been relatively slight. Instead, the Defendants have put the Court in the position of needing to reconstruct Defendants' financial position retroactively, a more complicated process than it would have been earlier.

9

course of the litigation, which is implicated by Defendants' petition to release funds.

Further, the FTC has put forth evidence that in fact Defendants did not spend their money prudently. For example, Mr. and Ms. Park's personal expenditures appear to have increased dramatically since the litigation began. No explanation has been provided as to how that money was spent and why it was not available to pay the Ungaretti Firm's fees in this case.

In addition, Defendants paid the Ungaretti Firm a monthly retainer ranging between $50,000 and $100,000 per month. The Ungaretti Firm represented to the Court during oral argument that most of that money was allocated to other litigation, and justified the allocation based on the fact that the other litigation was instituted earlier. The Court rejects this as a justification. Before any additional funds are released, the Court must know the total amount in fees simultaneously incurred on all matters handled by the Ungaretti Firm on behalf of Defendants and the total amount paid by Defendants for these matters. To the extent payments were made, the Court wants to know why these payments were not allocated *pro rata* among all matters, and why it would be equitable to seek all unpaid fees from the frozen assets. Consumers should not be made to finance Defendants' other legal matters.

The FTC is currently engaged in asset-related discovery pursuant to the Final Judgment Order. Upon completion of that discovery, the Court will have a much better understanding of the Defendants' past and present financial position. It will also make clear what additional assets will be turned over and how difficult it will be to liquidate any of those assets—an onus the Court is inclined to place on Defendants or the Ungaretti Firm. It

therefore makes sense to take the additional time to paint a full picture, a delay that will likely pale in comparison to the delay Defendants caused in bringing the motion so long after it became apparent that they were unable to pay their legal bills. While the Court has made several observations as to Defendants' financial state, those observations are meant as illustrative and not exhaustive. If Defendants bring another petition after asset discovery is completed, the burden will be upon Defendants to prove that every reasonably possible dollar was spent on the Ungaretti Firm's fees.

The frozen assets are being held for consumers who the Court has determined are entitled to redress. Taking more than $700,000 in cash away from consumers to give to the Ungaretti Firm gives the Court great pause. While the Court does not rule out the possibility of granting release of some frozen assets after asset discovery has been completed but before the amount required for consumer redress is known, Defendants will face an uphill battle in trying to convince the Court that release is appropriate at that time.

Finally, the Ungaretti Firm has indicated that absent immediate release of cash funds to pay the entire outstanding bill, it will be required to withdraw from the case. The Court is sensitive to this issue, but points out that Jung Joo Park, while found not to have violated the FTC Act, was nonetheless a defendant represented by the Ungaretti Firm and likely liable for its fees. The Court has recently released Ms. Park's assets, which are more than enough to cover the fees left unpaid after release of the interest on the frozen accounts. In any event, under these circumstances the Court will not require consumers to fund Defendants' past legal bills solely for the purpose of ensuring Defendants' future representation.

## IV. CONCLUSION

Defendants' petition for fees and expenses is granted in part and denied in part. The Court orders that all interest earned through November 13, 2006, on assets frozen pursuant to the Preliminary Injunction Order in this case be released to Ungaretti & Harris, LLP, on the condition that the Ungaretti Firm agrees to subject itself to this Court's jurisdiction in the event the FTC seeks review of this order. Defendants may bring another petition to release funds only after the FTC has completed asset discovery against Defendants. Defendants shall under no circumstance be entitled to release of funds to pay legal fees incurred after the date the Final Judgment Order was entered.

**SO ORDERED THIS 22nd DAY OF DECEMBER.**

*/s/ Morton Denlow*

_____
**MORTON DENLOW**
**PRESIDING MAGISTRATE JUDGE**

**Copies mailed to:**

Theodore H. Hoppock
Reille C. Montague
Heather Hippsley
Janet M. Evans
Edward Glennon
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW, NJ-3213
Washington, DC 20580

Counsel for Plaintiff

Michael A. Ficaro
Ross E. Kimbarovsky
Richard H. Tilghman
UNGARETTI & HARRIS, LLP
3500 Three First National Plaza
70 West Madison
Chicago, IL 60602-4283

Counsel for Defendants